### CHURCH v. LAPHAM.

(Supreme Court, Appellate Division, Third Department. May 4, 1904.)

1. VENDOR AND PURCHASER—IMPROVEMENTS ON LAND—DEFAULT—FORFEITURE
OF IMPROVEMENTS.

Where a contract for the sale of land as executed by the vendee and
submitted to the vendor did not contain a provision that fixtures and
machinery placed on the premises should be retained by the vendor in
case of default, but the vendor interlined such provision, and returned
the contract executed by him to the vendee, who acquiesced in the con-
tract, the fact that before the contract was returned to the vendee he
had expended money on the premises, and proceeded as though in owner-
ship thereof, did not relieve him from the consequences of the provision
in question, since whatever he did before the completion of the contract
was done at his peril.

2. SAME—CHANGE IN CONTRACT—ACQUIESCENCE.

A contract for the sale of land as executed by the vendee and submit-
ted to the vendor did not contain a provision that in case of default the
fixtures and improvements should become the property of the vendor, but
he interlined such provision, executed the contract, and returned it to
the vendee. *Held*, that the vendee's failure to object to the provision
for a year and a half thereafter amounted to an acceptance of the con-
tract as modified by acquiescence.

3. SAME—MORTGAGE OF FIXTURES—NOTICE TO MORTGAGEE.

Where a contract for the sale of land provided that all fixtures placed
on the premises should, in case of default, remain the property of the
vendor, and a mortgage given by the vendee on the fixtures recited that
it was given subject to the terms of a contract with the vendor, though
there had been a contract between the vendor and vendee for the man-
ufacture of lumber, the recital in the mortgage was sufficient to put the
mortgagee on inquiry as to the provision in the contract of sale relative
to the fixtures.

Appeal from Trial Term, Clinton County.

Action by Charles E. Church against Charles C. Lapham. From a
judgment in favor of plaintiff, from an order denying a motion to set
aside the verdict, and from an order denying a new trial, defendant ap-
peals. Reversed.

In April, 1901, defendant was the owner of a certain parcel of land at Lap-
ham, N..Y. Through his agent, one Clough, a contract was made, subject to
defendant's approval, with the firm of Myers & Manning, of Peru, N. Y., for
the sale to them of this piece of land, with stipulated payments, upon the
making of which the said firm of Myers & Manning were to be entitled to a
deed of the land. Myers & Manning were to erect upon this land a heading
mill. In the contract as first drawn subject to the approval of the defend-
ant it was provided that if the parties of the second part, to wit, Myers &
Manning, should fail to perform their contract, the party of the first part,
to wit, Lapham, should have the right to declare the contract void, and retain
whatever might have been paid thereon, "and all improvements that may have
been made on said premises, and may consider and treat the parties of the
second part as his tenant holding over without permission, and may take im-
mediate possession of the premises, and remove the parties of the second part

therefrom." In this condition the contract was signed by Myers & Manning, and sent to the defendant for his signature. By reason of the defendant's absence from the city of New York, to which place it was sent, the contract was not signed by him until some time in June or July of 1902, and when it was returned, after the word "improvements" in the part of the contract quoted, the following words were interlined, "including fixtures and machinery." As thus interlined and signed by Lapham, the contract was returned to Myers & Manning, who shortly thereafter noticed the interlineation. No objection was made thereto either to Mr. Lapham, the defendant, or to Mr. Clough, the agent, who was frequently around the premises, and with whom the said firm had numerous dealings. Thereafter, and upon the 26th day of April, 1902, the said firm of Myers & Manning, having become involved, and being threatened with the prosecution of a claim, gave to this plaintiff a chattel mortgage. The chattel mortgage recites that the mortgagors, "being justly indebted unto Charles E. Church in the sum of $622.91, being for goods had from store to pay help, and notes given for same and their renewal: Now, for securing the payment of said debts and interest from the date hereof to the said Charles E. Church, do hereby sell, assign, and transfer to the said Charles E. Church all the goods, chattels, and property described in the following schedule, viz., all cider mill machinery and fixtures, belting, oil, and tools pertaining thereto, now contained in a certain building known as the 'Myers Cider Mill,' at Lapham, N. Y.; also all heading mill machinery, belting, shafting, pulleys, piping, oil and tools; also boilers, blowers, engine, two water wheels at said place. This mortgage given subject to terms of contract with N. Lapham & Co., said property now being and remaining in the possession of said Myers & Manning, who agree to care for the same and keep in good order." In December, 1903, the said firm of Myers & Manning, having paid nothing whatever upon the land contract, and being indebted to the defendant for upwards of $1,400 in addition thereto, surrendered possession of the property to the defendant. The plaintiff foreclosed his mortgage, and bid in the property, and thereupon demanded from the defendant the delivery of the machinery and fixtures, which were covered by his chattel mortgage. This the defendant refused to deliver, whereupon the plaintiff brings this action for conversion. The trial judge submitted to the jury two questions: First. Whether this machinery was so annexed to the freehold as to become a part thereof; charging that, if so annexed, the plaintiff had no rights under his chattel mortgage. The judge then charged that the plaintiff had knowledge of sufficient facts to put him on inquiry as to any rights which the defendant had under his land contract, and submitted to the jury whether the land contract, as thus interlined by the defendant in New York before signing and returning, had ever become a valid contract by the acceptance and acquiescence of Myers & Manning therein. The jury found with the plaintiff upon both of said questions, and rendered a verdict for the value of the property claimed by the plaintiff under his chattel mortgage and withheld by the defendant. From the judgment entered upon this verdict, and from the order denying the defendant's motion for a new trial, the defendant here appeals.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

C. J. Vert, for appellant.
Barnard & Barnard (H. E. Barnard, of counsel), for respondent.

SMITH, J. We are of opinion that the trial judge erred in submitting to the jury the question as to whether there ever became a completed contract between the defendant and Myers & Manning. In the proposed contract, as first signed by Myers & Manning, the defendant was given the right by default to retain whatever might have been paid upon the contract and all improvements that might have been made on said premises. To this the defendant did not agree, but added to the word "improvements" the words "including fixtures and ma-

chinery," and signed the same. When this contract was returned to Myers & Manning, and they had notice of this interlineation, it was their right to refuse to accept the modification. The fact that in the meantime they had put money upon the premises, and had proceeded as though in ownership thereof, cannot alter the legal situation, as whatever they did before the completion of the contract was done at their peril. They had divers dealings with the defendant and his agent for a year and a half thereafter, without one word of protest or objection to this modification, and under the circumstances in this case have, as matter of law, accepted this contract by acquiescence therein. This, we think, follows irrespective of the distinct recognition thereof, either in the letter of Manning dated December 9, 1902, or in the chattel mortgage in the reference to the contract with N. Lapham & Co., to which the chattel mortgage was made subject. N. Lapham & Co. was the name under which Mr. Charles C. Lapham was doing business, as was known both by Myers & Manning and by the plaintiff himself. The trial court correctly held, we think, that the plaintiff had notice of whatever rights the defendant had under this contract, or at least notice of sufficient facts to put him upon his inquiry. It appears that, in addition to this land contract, there had been a contract between Myers & Manning and N. Lapham & Co., by which Myers & Manning were to work into barrel heads certain timber belonging to the defendant. It seems clear, however, that this contract cannot be the one referred to in the chattel mortgage. It has too remote a bearing upon the title to the machinery. The only reasonable inference is that the contract referred to in the chattel mortgage was the land contract in question. Inquiry by the plaintiff at the time the mortgage was taken would, without doubt, have disclosed the contract in question, and the rights of the defendant in the fixtures and machinery. It is difficult to see, however, how the question of notice becomes very material, inasmuch as upon the face of the chattel mortgage it appears to have been given for a precedent debt. For this error we think the judgment must be reversed.

Judgment and order reversed, and new trial granted, with costs to appellant to abide the event. All concur.